# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**120**

**KA 15-01145**

PRESENT: WHALEN, P.J., PERADOTTO, CARNI, LINDLEY, AND DEJOSEPH, JJ.

---

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,

V                                            MEMORANDUM AND ORDER

THOMAS R.O., DEFENDANT-APPELLANT.
(APPEAL NO. 1.)

---

FRANK POLICELLI, UTICA, FOR DEFENDANT-APPELLANT.

SCOTT D. MCNAMARA, DISTRICT ATTORNEY, UTICA (STEVEN G. COX OF COUNSEL), FOR RESPONDENT.

---

Appeal from a judgment of the Oneida County Court (Michael L. Dwyer, J.), rendered August 20, 2013. The judgment convicted defendant, upon his plea of guilty, of burglary in the second degree.

It is hereby ORDERED that the judgment so appealed from is reversed as a matter of discretion in the interest of justice, the conviction is vacated, defendant is adjudicated a youthful offender, and the matter is remitted to Oneida County Court for sentencing.

Memorandum: In appeal No. 1, defendant appeals from a judgment convicting him upon his plea of guilty of burglary in the second degree (Penal Law § 140.25 [2]) and, in appeal No. 2, he appeals from a judgment convicting him upon his plea of guilty of robbery in the first degree (§ 160.15 [3]). County Court sentenced defendant to concurrent terms of incarceration, the greater of which is a determinate term of eight years and a period of postrelease supervision of five years.

At the outset, with respect to both appeals, we agree with defendant that his waiver of the right to appeal is invalid. Before this Court may enforce a waiver of the right to appeal, we must examine the record "to ensure that the waiver was voluntary, knowing and intelligent" (*People v Callahan*, 80 NY2d 273, 283; *see People v Seaberg*, 74 NY2d 1, 11). "It is the trial court's responsibility, 'in the first instance,' to determine 'whether a particular [appellate] waiver satisfies these requirements' " (*People v Bradshaw*, 18 NY3d 257, 264, quoting *Callahan*, 80 NY2d at 280). In making that determination, the court must consider "all the relevant facts and circumstances surrounding the waiver, including the nature and terms of the agreement and the age, experience and background of the accused" (*Seaberg*, 74 NY2d at 11). Further, while " 'a trial court

need not engage in any particular litany' or catechism in satisfying itself that a defendant has entered a knowing, intelligent and voluntary appeal waiver, [it] 'must make certain that a defendant's understanding' of the waiver, along with other 'terms and conditions of a plea agreement is evident on the face of the record' " (*Bradshaw*, 18 NY3d at 265, quoting *People v Lopez*, 6 NY3d 248, 256).

Here, defendant was 19 years old at the time of the plea proceeding and had no prior experience with the criminal justice system. In addition, as the court noted during the plea proceeding, defendant had a history of mental illness and psychiatric hospitalizations. With respect to the waiver of the right to appeal, the court advised defendant that it was a condition of the plea, and defendant stated that he understood. Immediately thereafter, however, defendant engaged the court in rambling and incoherent questioning concerning his sentence and doctors. Following that exchange, the court stated to defendant that it felt "like [they were] going over and over and over the same thing," and that defendant was "hearing, but [he was] not understanding." Recognizing that the waiver of the right to appeal was under consideration when defendant initiated that exchange, the court returned to that subject, asking defendant simply if he agreed to give up his right to appeal in exchange for the agreed-upon sentence, and defendant replied, "Yes."

In view of defendant's particular circumstances, i.e., his youth, inexperience, and history of mental illness, along with his statements during the plea proceeding, we conclude that defendant's understanding of the waiver of the right to appeal is not evident on the face of the record, and that the waiver is invalid. In reaching that conclusion, we note that the same oral colloquy may have been adequate in other circumstances for a defendant of a different "age, experience and background" (*Seaberg*, 74 NY 2d at 11). "[T]he same or similar oral colloquy . . . can produce an appeal waiver that is valid as to one defendant and invalid as to another defendant" (*People v Brown*, 122 AD3d 133, 143). Here, however, we "cannot be certain that . . . defendant comprehended the nature of the waiver of appellate rights" (*Lopez*, 6 NY3d at 256). Review of defendant's challenge to the denial of his application for youthful offender status is therefore not foreclosed by the waiver of the right to appeal.

We agree with defendant's contention in both appeals that he should be afforded youthful offender status. It is undisputed that defendant, who was between the ages of 16 and 19 when the crimes were committed, is eligible for youthful offender treatment under CPL 720.10 (1) and (2) (*see People v Rudolph*, 21 NY3d 497, 500). In determining whether to afford such treatment to a defendant, a court must consider "the gravity of the crime and manner in which it was committed, mitigating circumstances, defendant's prior criminal record, prior acts of violence, recommendations in the presentence reports, defendant's reputation, the level of cooperation with authorities, defendant's attitude toward society and respect for the law, and the prospects for rehabilitation and hope for a future constructive life" (*People v Cruickshank*, 105 AD2d 325, 334, *affd sub nom. People v Dawn Maria C.*, 67 NY2d 625; *see People v Shrubsall*, 167

AD2d 929, 930).

    In our view, the only factor weighing against affording defendant youthful offender treatment here is the seriousness of the crimes (*see Shrubsall*, 167 AD2d at 930; *Cruickshank*, 105 AD2d at 335).  At the time he committed the crimes, defendant had no criminal record or history of violence (*see People v Amir W.*, 107 AD3d 1639, 1641).  The most significant mitigating circumstance here, defendant's history of mental illness, is detailed in the presentence report (PSR), a memorandum from the Center for Community Alternatives (CCA), and reports prepared by a psychologist and psychiatrist.  All of those documents indicate that, at the time the crimes were committed, defendant suffered, inter alia, from bipolar disorder, which had been misdiagnosed and inappropriately treated with medication that exacerbated defendant's manic symptoms.  The CCA memorandum further states that defendant's behavior during the period between the crimes "is an aberration from his character and can be directly linked to his mental illness."  That statement was echoed in numerous letters submitted on defendant's behalf from members of the community.  The CCA memorandum states, in addition, that defendant has accepted responsibility for his actions and expressed genuine remorse for the effect of his criminal conduct on the victims, and concludes that, with appropriate treatment, defendant has the capacity for a productive and law-abiding future.  Finally, both the PSR and CCA memorandum recommend youthful offender treatment (*see id.* at 1641).

    Although we do not conclude, after weighing the appropriate factors, that the court abused its discretion in denying defendant youthful offender status, we nevertheless choose to exercise our discretion in the interest of justice by reversing the judgments, vacating the convictions, and adjudicating defendant a youthful offender, and we remit the matters to County Court for sentencing on the adjudications (*see Cruickshank*, 105 AD2d at 335; *see generally People v Jeffrey VV.*, 88 AD3d 1159, 1160).

    In view of our decision, we do not address defendant's remaining contention.

    All concur except Carni and DeJoseph, JJ., who dissent and vote to affirm in the following memorandum:  We respectfully dissent and would affirm the judgments of conviction inasmuch as we are constrained by the valid waiver of the right to appeal.  We conclude that the record establishes that the waiver was knowingly, voluntarily, and intelligently entered (*see People v Lopez*, 6 NY3d 248, 256).  Indeed, the court explicitly stated as "[o]ne other condition" of defendant's guilty plea that defendant would be required to waive his right to appeal, thereby making clear to defendant " 'that the right to appeal [was] separate and distinct from those rights automatically forfeited upon a plea of guilty' " (*People v Dames*, 122 AD3d 1336, 1336, *lv denied* 25 NY3d 1162; *see People v Barber*, 117 AD3d 1430, 1430, *lv denied* 24 NY3d 1081; *People v Ware*, 115 AD3d 1235, 1235).  We further conclude that the record as a whole establishes that defendant understood that the waiver of the right to appeal meant that entry of the judgments of conviction upon his plea of guilty would constitute

the final disposition of his case.

Entered:  February 11, 2016                    Frances E. Cafarell
                                               Clerk of the Court